**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

(1) EYAN HOLMSTROM, an individual,

Plaintiff,

v.

(1) UNIVERSITY OF TULSA, a private educational institution; and
(2) LARRY PUTMAN, individually and in his official capacity; and
(3) MATT WARREN, individually and in his official capacity,

Defendants.

Case No. 22-cv-00408-CVE-JFJ

## MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), The University of Tulsa[1] ("TU") moves to dismiss the *Amended Complaint* (Dkt. No. 12) for failure to state a claim. Plaintiff asserts a single claim for relief against TU for alleged "Sex Discrimination and Retaliation in Violation of Title IX." Dkt. No. 12 at ¶¶ 28-34. However, Plaintiff has failed to allege well-pleaded facts necessary to state a plausible Title IX claim. Specifically, Plaintiff failed to allege any facts tending to establish TU acted based on gender bias or retaliatory animus. Because Plaintiff has not pleaded and cannot plead facts plausibly showing TU's actions were because of gender bias against male students or retaliatory animus, Plaintiff's *Amended Complaint* should be dismissed. If for any reason the Court were to decide some portion of Plaintiff's *Amended Complaint* should survive dismissal—and it shouldn't—then Plaintiff's request for mental anguish, emotional distress, and punitive damages should be dismissed, because these types of damages are unavailable under Title IX claim.

[1] TU understands Defendants Putman and Warren have not been served.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges he and another TU student attended a fraternity event in March 2019 and engaged in consensual sexual intercourse. Dkt. No. 12 at ¶9. In response to Jane Doe's complaints,[2] TU afforded Plaintiff two separate hearings and two separate appeals. *Id.* at ¶11. Now, however, Plaintiff accuses TU of "serious irregularities" and "discriminatory conduct" of "those involved." *Id.* at ¶11. Plaintiff also claims TU failed to inform him of witnesses who would attend and improperly permitted the presence of "character witnesses."[3] *Id.* at ¶¶13, 20.

Plaintiff also alleges TU improperly "adjudicated" him on a trespass conduct violation. *Id.* at ¶17. Plaintiff appealed the decision on the trespass violation while a second hearing on Jane Doe's allegations against Plaintiff were being heard. *Id.* at ¶18. Plaintiff claims TU improperly used the separate conduct violation against him at the hearing on Jane Doe's allegations.[4] *Id.* at ¶19.

Plaintiff admits TU found him responsible for sexual assault (after two separate hearings) and expelled him. *Id.* at ¶ 21. Plaintiff concedes he had two different hearings with two subsequent appeals. *Id.* Plaintiff alleges the second appeal board rendered its decision August 13, 2020, just "hours" before changes were made to TU's Title IX enforcement rules. *Id.* at ¶24.

Plaintiff's *Amended Complaint*, however, does not include *any* specific *factual* allegations that tend to show TU's actions were motivated by gender bias or retaliatory animus—*none*. Instead, he asserts in wholly conclusory fashion merely that "the factual allegations" in his *Amended Complaint* "illustrate only some of the ways Defendants unfairly discriminated against

---

[2] Though Plaintiff's fact allegations may be accepted as true at this stage, Jane Doe (Dkt. 12 at ¶10) denied it was consensual and, after two separate hearings, the TU Student Conduct Board determined it was not consensual.

[3] Emails sent to Plaintiff listing the witnesses to be at the hearing will refute this allegation but, even if credited as true, it lacks any facts of gender bias.

[4] Again, Plaintiff's allegations are inaccurate and lack facts showing gender bias.

Plaintiff because of his gender" (Dkt. No. 12 at ¶ 25) and that TU's conduct "constitutes unfair gender-based discrimination and retaliation in violation of Title IX." *Id.* at ¶33. These types of conclusory assertions are simply insufficient as a matter of law. Dismissal is warranted.

## II. MOTION TO DISMISS STANDARD UNDER *TWOMBLY* AND *IQBAL*

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This requirement is "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified that *Twombly* rests on two separate "working principles." *Iqbal*, 556 U.S. at 678. First, the principle that courts must accept the truth of allegations in a complaint does *not* apply to mere legal conclusions. *See id.* at 678. Second, even if a complaint pleads more than legal conclusions, it is still deficient if it does not state a "plausible claim for relief." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citations omitted)). Thus, *Twombly* and *Iqbal* impose a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts in which amplification is needed to render the claim *plausible*." *Iqbal*, 556 U.S. at 670 (emphasis in original) (citation omitted).

To survive a motion to dismiss, Plaintiff's *Amended Complaint* must therefore contain sufficient factual averments to "raise a right to relief above the speculative level." *Bell Atlantic*, 550 U.S. at 555. A pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 556. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U.S. at 678 (citations omitted). Here, the *Amended Complaint* fails under *Twombly* and *Iqbal*.

## III. THE COURT SHOULD DISMISS THE TITLE IX CLAIM FOR LACK OF WELL-PLEADED FACTS OF GENDER BIAS OR RETALIATORY ANIMUS.

### A. Title IX Background

Title IX is a federal statute aimed at sexual discrimination and harassment in educational institutions which receive federal funding. The statute provides:

> No person in the United States shall, *on the basis of sex*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance. . . .

20 U.S.C. § 1681(a) (emphasis added). Sexual harassment of students, including violence and assault, are forms of sex discrimination prohibited by Title IX. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 648 (1999). "Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination" prohibited by Title IX. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005).

Schools receiving federal funds must "adopt and publish grievance procedures providing for the prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited. . . ." 34 C.F.R. § 106.8(c). But "courts should refrain from second-guessing the disciplinary decisions made by School administrators." *Davis*, 526 U.S. at 648.

### B. Plaintiff Failed to Allege Facts Plausibly Showing Gender Bias

To state a viable Title IX claim, Plaintiff must, at a minimum, make sufficient factual allegations of gender bias. But Plaintiff has failed to do so.

In *Doe v. Univ. of Colo.*, 255 F. Supp. 3d 1064 (D. Colo. 2017), the court dismissed a Title IX action for lack of sufficient facts of gender bias. There, the plaintiff was expelled based on claims he had raped two female students. *Id.* at 1068. Explaining the dismissal, the Court discussed two types of Title IX claims and emphasized that each requires factual allegations sufficient to show gender bias.

> [T]wo theories—really, evidentiary templates—under which a [Title IX] cause of action would lie. The first theory, commonly referred to as "erroneous outcome," requires a plaintiff to "allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." *Id.* at 715. The second theory, known as "selective enforcement," "asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Id.* "While some of the elements of the claims are different under these theories, *both require that a Plaintiff show that gender bias was a source of the deprivation.*"

*Univ. of Colo.*, 255 F. Supp. 3d at 1074 (emphasis added).

The Colorado District Court also collected and analyzed various Title IX decisions, noting that sufficient factual allegations must include more facts than those which merely tend to show "pro-victim" bias, which isn't the same as unlawful "anti-male" bias:

> A majority of cases, however, have held that *Yusuf*-like pleading of the gender bias component no longer passes muster, and that the various plaintiffs' allegations largely tend to show, if anything, pro-victim bias, which does not equate to anti-male bias. *See, e.g., Doe v. Baum*, 227 F.Supp.3d 784, 816–22, 2017 WL 57241, at *23–27 (E.D. Mich. Jan. 5, 2017); *Austin*, 205 F.Supp.3d at 1222–27; *Doe v. Regents of the Univ. of Cal.*, 2016 WL 5515711, at *4–6 (C.D. Cal. July 25, 2016); *Doe v. Univ. of Cincinnati*, 173 F.Supp.3d 586, 606–08 (S.D. Ohio 2016) ("*Cincinnati*"); *Marshall v. Ohio Univ.*, 2015 WL 7254213, at *5–8 (S.D. Ohio Nov. 17, 2015); *Ludlow v. Northwestern Univ.*, 125 F.Supp.3d 783, 791–93 (N.D. Ill. 2015); *1075 *Doe v. Univ. of Mass.–Amherst*, 2015 WL 4306521, at *6–9 (D. Mass. July 14, 2015); *Sahm v. Miami Univ.*, 110 F.Supp.3d 774, 777–80 (S.D. Ohio 2015); *Yu v. Vassar Coll.*, 97 F.Supp.3d 448, 461–81 (S.D.N.Y. 2015).

*Univ. of Colo.*, 255 F. Supp. 3d at 1074-75. Based on these standards, the court concluded that plaintiff's allegations created "no inference of gender bias [that] rises to the level of 'plausible'" and thus "failed to state a claim for sex discrimination under Title IX." *Id.* at 1078, 1079.

Numerous other courts have similarly decided, finding that conclusory allegations of gender bias are insufficient to state a viable Title IX claim. In particular, multiple courts have observed that, at most, many of the plaintiffs' allegations assert "victim bias," not "gender bias." *See, e.g. Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 778 (S.D. Ohio 2015) (granting motion to dismiss where "factual allegations in Amended Complaint do not satisfy any of these traditional

means of demonstrating gender bias" and emphasizing that allegations showing "a university official is biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students."); *Doe v. Univ. of Cinn.*, 173 F. Supp. 3d 586 (S.D. Ohio 2016) (explaining that "under any theory, Plaintiffs must still allege facts sufficient to conclude that UC's conduct was motivated by gender bias" and "Plaintiffs have not alleged facts showing that the results of their disciplinary proceedings were motivated by gender bias" but "at worst UC's actions were biased in favor of alleged victims of sexual assault and against students accused of sexual assault" which "is not the same as gender bias"); *Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 682 (M.D. Tenn. 2018) (declaring that "courts must look with a critical eye to determine whether a plaintiff plausibly alleges the required causal connection—*i.e.*, particular circumstances suggesting that a gender bias was a motivating factor … as opposed to merely making untethered, vague, or conclusory allegations of gender bias, unsupported by even minimal data, credible anecdotal references, or the purported presence of specific external pressures, are insufficient to support a plausible erroneous outcome claim."); *Doe v. Washington Univ.*, 434 F. Supp. 3d 735, 760 (E.D. Mo. 2020) (holding that a "general, conclusory assertion does not support a finding of gender bias by the decision makers"); *Doe v. Col. College Chicago*, 299 F. Supp. 3d 939, 951 (N.D. Ill. 2017) (dismissing Title IX claims because "courts regularly reject Title IX claims where the complained of harassment was not gender-based."); *see also Doe v. Cummins*, 662 Fed. Appx. 437 (6th Cir. 2016) (affirming District Court that appellants failed to state a plausible Title IX gender-discrimination claim).

Plaintiff's assertion that TU engaged in "unfair gender-based discrimination" (Dkt. 12 at ¶33) is exactly the type of conclusory allegation courts regularly reject as insufficient to plead a plausible Title IX claim. Plaintiff essentially asks the Court to blindly accept his conclusory

assertion without requiring him to aver any well-pleaded facts that plausibly show any actual gender bias.

In *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994),[5] the Second Circuit Court of Appeals noted that "[a]llegations of a causal connection in the case of university disciplinary cases can be of the kind that are found in the familiar setting of Title VII cases." *Yusuf*, 35 F.3d at 715. "Such allegations might include, *inter alia*, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Id.* Plaintiff's *Amended Complaint*, however, is devoid of any such allegations. He alleges no statements by any TU officials that reflect alleged gender bias. And while he alleges "irregularities" in TU's processes, Plaintiff includes no fact averments from which a plausible inference of gender biase can be inferred. Thus, Plaintiff's allegations fail to rise to the level of the lower, outdated *Yusuf* standard, much less the higher, current pleading standard under *Twombly* and *Iqbal*. Accordingly, the Title IX discrimination claim should be dismissed.

**C. Plaintiff Failed to Allege Facts Plausibly Showing Retaliation**

To state a viable Title IX retaliation claim, Plaintiff must allege sufficient facts plausibly showing TU took some form of adverse action against him for complaining of sex discrimination. Jackson, 544 U.S. at 184; *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017). But Plaintiff has failed to do so.

Specifically, Plaintiff has alleged no well-pleaded facts plausibly establishing he engaged in legal protected activity by complaining about sex discrimination to someone in a position of

---

[5] As observed by several courts, *Yusuf* preceded *Iqbal* and *Twombly*. Some courts thus hold that current pleading standards now require more than *Yusuf*. *See, e.g., Doe v. Univ. of Colo.*, 255 F. Supp. 3d at 1074 (noting that "[a] majority of cases, however, have held that *Yusuf*-like pleading of the gender bias component no longer passes muster").

authority at TU or that he suffered any form of adverse school-related action as a result of his complaint. *See, e.g., Feminist Majority Foundation v. Hurley,* 911 F.3d 674 (4th Cir. 2018) ("At the pleading stage, the plaintiffs are required to sufficiently allege … they engaged in protected activity under Title IX, and … as a result … suffered an adverse action"); *Kincaid v. Unified Sch. Dist. No. 500, Kansas City, Kan.,* 572 F. Supp. 3d 1081 (D. Kan. 2021) ("To state a claim for retaliation under Title IX, plaintiff must allege that: '1) he or she engaged in protected activity; 2) defendant had knowledge of the protected activity; 3) materially adverse school-related action was taken against plaintiff; and 4) there was a causal connection between the protected activity and the adverse action.'"). Since Plaintiff failed to allege well-pleaded facts plausibly establishing any of the necessary elements for a viable retaliation claim under Title IX, it must be dismissed.

## IV. PLAINTIFF'S CLAIM FOR DAMAGES FOR MENTAL ANGUISH, EMOTIONAL DISTRESS, AND PUNITIVE DAMAGES MUST BE DISMISSED.

Plaintiff seeks damages that "include[e] mental anguish, emotional distress … and punitive damages." Dkt. No. 12 at ¶34. To the extent any portion of Plaintiff's *Amended Complaint* survives dismissal—and it shouldn't—Plaintiff's request for mental anguish, emotional distress and punitive damages should be dismissed.

In *Cummings v. Premier Rehab Keller, P.L.L.C.*, __ U.S. __, 142 S. Ct. 1562 (2022), the Supreme Court considered the damages recoverable for violations of statutes that Congress passes pursuant to the Spending Clause. In doing so, the Court analogizes to contract law. Thus, a recipient of federal funds is, according to *Cummings*, considered as generally having agreed to adhere to certain requirements in exchange for the funds provided by Congress. *See Cummings*, 142 S. Ct. at 1569-70 (*citing Barnes v. Gorman*, 536 U.S. 181, 185-86 (2002) and *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998)). *Cummings* draws support from *Barnes*, which held that "a federal funding recipient may be considered 'on notice that it is subject not only to those

remedies explicitly provided by the relevant legislation, but also to *those remedies traditionally available in suits for breach of contract*.'" *Cummings*, 142 S. Ct. at 1571 (*quoting Barnes*, 536 U.S. at 187); *see also Barnes*, 536 U.S. at 187) ("[W]e may presume that a funding recipient is aware that, for breaching its Spending Clause 'contract' with the Federal Government, it will be subject to the usual contract remedies in private suits."). *Barnes* specified that punitive damages are not available for violations of Spending Clause legislation.

> Thus we have held that under Title IX, which contains no express remedies, a recipient of federal funds is nevertheless subject to suit for compensatory damages, and injunction, forms of relief traditionally available in suits for breach of contract. *See, e.g.,* Restatement (Second) of Contracts § 357 (1981); 3 S. Williston, Law of Contracts §§ 1445–1450 (1920); J. Pomeroy, A Treatise on the Specific Performance of Contracts 1–5 (1879). Like Title IX, Title VI mentions no remedies—indeed, it fails to mention even a private right of action (hence this Court's decision finding an implied right of action in *Cannon*). But punitive damages, unlike compensatory damages and injunction, are generally not available for breach of contract, *see* 3 E. Farnsworth, Contracts § 12.8, *188 pp. 192–201 (2d ed.1998); Restatement (Second) of Contracts § 355; 1 T. Sedgwick, Measure of Damages § 370 (8th ed. 1891).

*Barnes v. Gorman*, 536 U.S. 181, 187-88 (citations omitted). In *Cummings*, the Supreme Court concluded that emotional distress damages also are not available. *Cummings*, 142 S. Ct. at 1576 ("[W]e hold that emotional distress damages are not recoverable under the Spending Clause antidiscrimination statutes we consider here."). Thus, to the extent Plaintiff manages to allege a Title IX claim, Plaintiff's request for mental anguish, emotional distress or punitive damages should be dismissed.

## CONCLUSION

Plaintiff's *Amended Complaint* should be dismissed for failure to state a claim. Plaintiff has failed to allege any well-pleaded facts necessary to plausibly show gender bias or retaliation required of a viable Title IX claim. To the extent any portion of Plaintiff's Complaint survives,

Plaintiff's request for damages for mental anguish, emotional distress, and punitive damages should be dismissed. TU further requests such other relief as the Court deems just and proper.

Respectfully submitted:

*s/Chris S. Thrutchley*
Christopher S. Thrutchley, OBA No. 15859
**GABLEGOTWALS**
110 North Elgin Avenue, Suite 200
Tulsa, OK 74120
(918) 595-4800
(918) 595-4990 (fax)
cthrutchley@gablelaw.com

***Attorney for Defendant,***
***The University of Tulsa***

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and based on the current filings of record, understand that a transmittal of a Notice of Electronic Filing will be sent to the following ECF registrants:

Daniel E. Smolen, OBA No. 19943
SMOLEN & ROYTMAN
701 South Cincinnati Ave.
Tulsa, OK 74119
T: (918) 585-2667
F: (918) 585-2669
*danielsmolen@ssrok.com*

Mark A. Smith, OBA No. 31231
CARUSO & SMITH, PLLC
P.O. Box 52186
Tulsa, OK 74152
T: (918) 583-5900
F: (918) 583-5902
*mark.smith@smithlegalok.com*

*s/Chris S. Thrutchley*
Christopher S. Thrutchley