UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EYAN HOLMSTROM, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| UNIVERSITY OF TULSA, ) | Case No. 22-CV-0408-CVE-JFJ |
| a private educational institution, ) | |
| LARRY PUTMAN, individually and ) | |
| in his official capacity, and ) | |
| MATT WARREN, individually and ) | |
| in his official capacity, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Before the Court are defendant The University of Tulsa's (TU) motion to dismiss (Dkt. # 13), plaintiff's response (Dkt. # 15), and defendant's reply (Dkt. # 16). On July 29, 2022, plaintiff filed a petition in Tulsa County District Court alleging sex discrimination and retaliation in violation of Title IX, 20 U.S.C. § 1681, as one claim against all three defendants.[1]  Dkt. # 2-2, at 5. On September 21, 2022, TU properly removed the action to this Court.  Dkt. # 2.  Prior to any defendant's answer or other responsive pleading, plaintiff filed an amended complaint on October 7, 2022, again stating one claim against all three defendants. Dkt. # 12. Defendant TU now moves to dismiss plaintiff's first amended complaint (Dkt. # 12) for failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(6).  Dkt. # 13.

---

[1] The Court has reviewed the docket sheet and it is unclear if defendants Larry Putman or Matt Warren have been served by plaintiff.  In any event, neither Putman nor Warren has answered the complaint or caused counsel to enter an appearance on their behalf.  Plaintiff has one claim against all defendants; thus, the analysis of whether a claim has been stated is applicable as to all three defendants as discussed below.

I.

Plaintiff's complaint alleges the following facts: in March 2019, Jane Doe accompanied plaintiff as his date to a weekend long off-campus formal event for plaintiff's fraternity. Dkt. # 12, at 2. In the months leading up to the March 2019 event, plaintiff and Doe "engaged in several consensual sexual acts." Id. On the Saturday night of the event, Doe and plaintiff "drank alcohol" and attended the formal event together. Id. Then they "engaged in sexual intercourse in their hotel room." Id. Approximately ten months later, while exiting a party hosted at plaintiff's fraternity house, a friend of Doe's shouted, "[t]here is a rapist at your party." Id. TU campus security heard the statement and questioned Doe's friend about it, at which point Doe's friend "accused . . . [p]laintiff of sexually assaulting her friend, . . . Doe." Id. at 3. An investigation was started and "Title IX proceedings occurred in which there were two hearings and two appeals." Id.

According to plaintiff, defendants Matt Warren, then TU's Title IX coordinator, and Larry Putman, then Associate Dean of Students at TU, "treated [plaintiff] as guilty . . . from the beginning of the proceedings." Id. Plaintiff's rights under Title IX were "violated" because defendants denied him "the same opportunity afforded [to] Ms. Doe to access witness lists and investigation materials," which "denied [him] the same opportunity . . . to prepare for and defend" against the sexual assault claim. Id. In addition, Doe was permitted "to have friends attend the hearings who gave character statements" in Doe's favor and against plaintiff, "in clear violation of [TU]'s policies and procedures for Title IX hearings." Id.

The first hearing board "found that [p]laintiff had, more likely than not, sexually assaulted" Doe. Id. Plaintiff appealed to the first appeal board, which reversed the decision "based on the

2

procedural irregularities raised by [p]laintiff," noting "specifically that the character witnesses presented by Ms. Doe were impermissible." Id.

While the first decision was on appeal, Putman "adjudicated a separate student conduct violation against [p]laintiff." Id. A "trespass ban had been imposed on [p]laintiff" from April 6, 2020 to May 31, 2020. Id. at 3-4. Plaintiff's vehicle was "spotted on campus on June 26, 2020," after the ban expired, but Putman "suspended [p]laintiff on July 21, 2020 until December 30, 2020," for violating the trespass ban. Id. at 4. Plaintiff appealed his suspension, and that appeal was "pending when his [s]econd [h]earing . . . was taking place." Id.

Putman and Warren "introduced evidence of the trespass ban violation to the [s]econd [h]earing [b]oard," which then referred to that violation in its decision. Id. Putman and Warren also "allowed the very same character witnesses from the first hearing to appear before the [s]econd [h]earing [b]oard." Id. This action defied the first appeal board's decision and was "in continued violation of TU's own procedures." Id. Plaintiff "was not informed that the character witnesses would be present at the second hearing." Id. Plaintiff was "found responsible for sexual assault and expelled." Id.

Plaintiff appealed the second hearing board's decision, "citing the very same violations of [TU]'s own policies and the introduction of the . . . trespass ban violation." Id. The second appeal board "upheld the [s]econd [h]earing [b]oard's decision and [p]laintiff's expulsion." Id. The decision was "rendered" on August 13, 2020, "mere hours before changes to Title IX rules went into effect," which "would have taken this matter outside the umbrella of [TU]'s Title IX enforcement." Id. at 4-5. Plaintiff was "expelled and forced to seek enrollment at a new university," and his reputation has been "harmed by these proceedings." Id. at 5.

Plaintiff asserts these facts "illustrate only some of the ways [d]efendants unfairly discriminated against [him] because of his gender," and that defendants' conduct "constitutes unfair gender-based discrimination and retaliation in violation of Title IX." Id. at 5, 6.

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. Of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

Plaintiff alleges one claim for sex discrimination and retaliation under Title IX. Dkt. # 12, at 5-6. Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX is enforceable through a private right of action when the discrimination is intentional. Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005). To state a claim under Title IX, plaintiff "must show: (1) that he or she was excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program; (2) that the program receives federal assistance; and (3) that the exclusion from the program was on the basis of sex." Seamons v. Snow, 84 F.3d 1226, 1232 (10th Cir. 1996). Plaintiff alleges, and TU does not dispute, that TU is a qualifying education program and plaintiff's expulsion excluded him from participation in that educational program. The issue is whether plaintiff has plausibly alleged that he was excluded "on the basis of sex."

"Title IX 'bars the imposition of university discipline where [sex] is a motivating factor in the decision to discipline.'" Doe v. Univ. of Denver (Doe II), 1 F.4th 822, 829 (10th Cir. 2021) (quoting Yusuf v. Vassar College, 35 F.3d 709, 715 (2d Cir. 1994)) (alteration in original). To determine whether sex was a motivating factor in a university's disciplinary decision, the Tenth Circuit has indicated that at the motion to dismiss stage, courts should ask "do the facts alleged, if true, raise a plausible inference that the university discriminated against [the student] 'on the basis of sex'?" Doe II, 1 F.4th at 830 (quoting Doe v. Purdue Univ., 928 F.3d 652, 667 (7th Cir. 2019)).

Plaintiff alleges the procedural irregularities in his discipline hearings and appeals constituted sex discrimination. The facts allege that plaintiff "was treated as guilty" from the beginning of the

5

proceedings, plaintiff was "denied the same opportunity as [the complainant] to prepare for and defend" against the sexual assault claim, the complainant was permitted "to have friends attend the hearings who gave character statements" in violation of the TU's Title IX policies and procedures, and the same irregularity that formed the basis of the initial reversal of plaintiff's first hearing was permitted at the second. Dkt. # 12 at 3, 4. In addition, plaintiff alleges that defendant Putman "adjudicated" a separate conduct violation for trespassing when plaintiff was permitted to be on campus, and evidence of that violation was introduced at plaintiff's second hearing. Id. at 4. Finally, plaintiff alleges that the second appeal board's decision upholding plaintiff's expulsion was "rendered" hours before Title IX rule changes went into effect, which "would have taken this matter outside the umbrella of [TU]'s Title IX enforcement . . . ." Id. at 4-5. Plaintiff alleges these facts illustrate some of the ways he was discriminated against "because of his gender." Id. at 5. However, plaintiff's conclusory allegation that defendants' actions were "because of his gender" is not supported by factual averments. None of these allegations raises an inference of gender bias. The allegations fail to indicate any connection between plaintiff's gender and any of defendants' alleged actions or disciplinary decisions. In fact, aside from the use of pronouns and honorifics when referring to various parties, the facts do not discuss or mention the parties' genders in any way, let alone in any way that is relevant to any alleged bias.

At best, these allegations raise an inference of pro-victim or anti-respondent bias, which is not the same as anti-male bias. "Classification as a sexual-misconduct respondent is not a classification based on gender. It is gender-neutral because both men and women can be respondents." Doe v. Univ. of Denver (Doe I), 952 F.3d 1182, 1196–97 (10th Cir. 2020); Doe II, 1 F.4th at 830 ("'[E]vidence of a school's anti-respondent bias . . . does not create a reasonable

inference of anti-male bias,' because both males and females can be respondents." (quoting Doe I 952 F.3d at 1196)). A school's anti-respondent bias alone does not plausibly support an interference of Title IX discrimination. Doe I, 952 F.3d at 1197 ("[B]y itself, evidence of a school's anti-respondent bias does not permit a reasonable inference of discrimination based on gender."). Therefore, to plausibly allege that sex is a motivating factor in the disciplinary decision, plaintiff's facts must allege "something more" than just pro-complainant or anti-respondent bias. Doe II , 1 F.4th 834 n. 13 (explaining that "the University's lopsided investigation did not raise an inference of anti-male bias in [Doe I] without something more . . . ."); id. at 836 (finding that "while a one-sided investigation, standing alone, might only raise a reasonable inference of anti-complainant bias, . . . where there is a one-sided investigation plus some evidence that sex may have played a role in a school's disciplinary decision," there is a factual question as to whether the "school's bias was based on a protected trait or merely a non-protected trait that breaks down across gender lines"). While the facts alleged may support a conclusion that defendants were biased against plaintiff, they do not raise a plausible inference that the alleged bias was based on plaintiff's sex, rather than his status as the respondent to the sexual assault allegation.

Plaintiff argues that the defendants were "pressured" to "render a speedy decision before new regulations would remove the alleged sexual assult from the province of [d]efendant's investigatory and disciplinary powers." Dkt. # 15, at 2. Even assuming this to be true, this alleged pressure does not raise an inference of sex discrimination rather than anti-respondent bias, nor does it provide the "something more" necessary to allege that plaintiff's sex was a motivating factor. In both Doe I and Doe II, the Tenth Circuit considered the effect of external pressure on the viability of a plaintiff's Title IX sex discrimination claim. In both cases, which were decided at the summary judgment

7

phase, plaintiffs presented evidence of external pressure, including a "Dear Colleague" letter issued by the U.S. Department of Education to colleges and universities, which placed pressure on institutions to change their Title IX processes or potentially jeopardize federal funding. Doe II, 1 F.4th at 830 (explaining that defendants "faced considerable external pressure to pursue female claims of sexual assault," and that "the University was the subject of two investigations by the Department of Education's Office of Civil Rights relating to its handling of sexual-assault claims"); Doe I, 952 F.3d at 1192 (outlining evidence of the "Dear Colleague" letter issued by the U.S. Department of Education to colleges and universities, which placed pressure on defendant to change their Title IX processes or potentially jeopardize federal funding). The same "Dear Colleague" letter formed the backdrop for plaintiff's claim in Doe v. Purdue University, 928 F.3d 652 (7th Cir. 2019), the case from which the Tenth Circuit adopted its framing for whether sex is a "motivating factor" in a school's disciplinary action. Doe II, 1 F.4th at 830 (recognizing the Purdue court's approach and "refram[ing] the operative question for a summary judgment"). In this case, plaintiff's only allegation concerning any pressure on TU is that TU was felt pressure to decide the second appeal "mere hours" before Title IX changes "would have taken [the] matter outside" of the scope of TU's Title IX enforcement. Dkt. # 12, at 4-5. This supposed pressure, combined with the procedural irregularities, still does not raise any inference that any of TU's discipline decisions were motivated by plaintiff's gender. The complaint contains no facts to support a conclusion that TU faced any risk, financial or otherwise, if it was to suddenly lose jurisdiction over the investigation. Nor do the alleged facts indicate any external pressure on TU at all. Thus, external pressure, which the Tenth Circuit has considered as part of the "something more" that is necessary to raise an inference of discrimination based on sex, Doe II, 1 F.4th at 830-31, is not alleged in plaintiff's complaint.

In addition to the procedural irregularities and external pressure, both Doe I and Doe II also considered statistics about the differences in how the defendant universities investigated sexual assault complaints when the respondent was male versus when the respondent was female. Doe I, 952 F.3d at 1193-95; Doe II, 1 F.4th at 835. In Doe II, the Tenth Circuit found statistical evidence of a gender disparity in the university's response to sexual assault claims provided the "something more" required to indicate plausible sex discrimination. 1 F.4th at 835. Here, however, plaintiff's complaint does not include any allegations concerning TU's record of investigating sexual assault cases at all, let alone allegations of any gender disparity. While production of statistical evidence is not necessary to simply allege a claim for discrimination, factual allegations of some differential treatment of complaints when respondents are male versus female, combined with adequate allegations that defendants faced external pressure and procedural deficiencies, may provide the "something more" required for plaintiff to allege that defendants' discipline decision "in his particular case was based on his gender." Doe I, 952 F.3d at 1193; see also Doe II, 1 F.4th at 835 (finding statistical evidence of a "sex disparity in the University's resolution of [] complaints" to be the "something more" that is required for such a Title IX claim). Instead, plaintiff's alleged facts support a plausible inference of only pro-victim or anti-respondent bias, but not any inference that the discipline decision was motivated by his sex. Therefore, plaintiff's complaint fails to allege a claim for sex discrimination under Title IX.

Plaintiff's complaint also fails to allege retaliation under Title IX. To plausibly plead a retaliation claim, plaintiff must allege facts that the defendants took adverse action against him for complaining of sex discrimination. Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 184 (2005) (stating that to prevail on a Title IX retaliation claim, plaintiff would "have to prove that [defendant]

retaliated against him *because* he complained of sex discrimination"); Hiatt v. Colorado Seminary, 858 F.3d 1307, 1315 (10th Cir. 2017) ("Title IX . . . prohibits retaliation against individuals because they have complained of sex discrimination."). Plaintiff has not alleged facts that suggest any defendant took any adverse action against him because he complained of sex discrimination. In his brief, plaintiff states "the same procedural irregularities underlying his claim of discrimination were taken in retaliation for [p]laintiff's opposition to the false allegations of sexual assault against him." Dkt. # 15, at 3. Opposing or defending against sexual assault allegations is not the same as complaining of sex discrimination. The facts allege that plaintiff defended himself against sexual assault allegations and appealed the adverse decisions against him. Nowhere in the complaint does he allege that he complained of sex discrimination, let alone that the subsequent hearing and appeals decisions were in retaliation for such a protected activity. Therefore, plaintiff's complaint also fails to allege a claim for retaliation under Title IX.

The Court finds that plaintiff's complaint alleges nothing more than a one-sided investigation against plaintiff, which does support an inference of sex discrimination. Therefore, plaintiff's complaint should be dismissed.

**IT IS THEREFORE ORDERED** that defendant TU's motion to dismiss (Dkt. # 13) is **granted**, and plaintiff's first amended complaint (Dkt. # 12) is **dismissed without prejudice** as to all defendants. A separate judgment of dismissal is entered herewith.

**DATED** this 8th day of May, 2023.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE